Good morning, Your Honors, and may it please the Court, Erika Hashimoto, I am the Director of the Appellate Litigation Clinic at Georgetown Law, and with the Court's permission, third-year law student Siona Sharma will present the case for Mr. Burey. Thank you very much. Ms. Sharma, you may proceed. Good morning, and may it please the Court. Mr. Dwayne Burey sought to reopen his removal proceedings and adjust his status as a follow-up petitioner. Yet he was prevented from doing so when a court clerk improperly rejected his motion, which he could not file electronically either. This led an immigration judge to refuse to consider his motion on the merits and deny it as untimely. That decision was an error. First, the immigration court erred when it determined that Mr. Burey's filing deadline was September 21, 2022. The Supreme Court in Riley clarified that an order of removal only becomes final when a petitioner's period to seek review expires. That date was October 21 in Mr. Burey's case, and the Court received his filing before then. But even if Mr. Burey's motion was ---- When was the final order entered? The final order was issued ---- No, when was the, yeah, when was the final order entered? We think that the initial removability decision was issued on September 21, but the final order was entered on October 21, 2022, Your Honor. And how are you making that distinction, issued versus entered? I know you're, you understand that the key word is entered because the statute says that your appellant or petitioner would have one year from the entry of the final order of removal, which I guess is why you're wanting to move it for a month. How are you making the distinction between issued versus entered? Yes, Your Honor. The reason is because in Riley, the Supreme Court determined that a final administrative removal order was issued as an initial removability decision and became a final order of removal on the same day because the petitioner in that case did not have a period to seek review. And here what we find important is the distinction between that issuance of an initial removability decision and a final order of removal. And because the statute in 1229A gives petitioners one year of the entry of a final order of removal, we think that that date was when Mr. Beery's period to petition for review expired. Your argument doesn't rise or fall on this issued versus entered point, does it? It doesn't, Your Honor. Because he wasn't, the petitioner wasn't allowed by the clerk to timely file, even if it was the September date. Exactly, Your Honor. Even if Mr. Beery's motion was late and it was September 21st, the immigration courts should have accepted it as timely anyways. But it wouldn't be late if the date was October 21st. That's correct, Your Honor. And what's the import of the Lopez versus Bondi decision? Here, Lopez was important because this court determined that Riley was intervening law. It means that given that Riley was determined on the same day that the BIA issued its decision in Mr. Beery's case, the application of Riley as intervening law allowed him, allows him to raise it now. And it also clarified that an initial removability decision is distinct from a final order of removal. And so. Is that key here? The initial removability decision, was that the September 21st date? We think so, Your Honor. What does Lopez say about that as being the date? Lopez says that an initial removability decision is distinct from a final order, but it did take the second prong of the final order of removal definition, which doesn't hinge on a petitioner's period to seek review. So that's why Riley is quite important for us. So when does it say it's final? When does Lopez say it's a final order? A final order of removal is on the earlier of two points. One, whether the BIA affirms the order, or two, whether the petitioner's period to seek review expires. And Mr. Beery's period expired on October 21st, 2022. But it doesn't at least have. He tried to file it on September 21st, correct? Yes, Your Honor, he did. And had he been permitted to do so, it would have been timely. Yes, Your Honor. Because Mr. Beery did try to file electronically multiple times before September 21st, but he could not. He tried to hand-deliver his motion to the court on September 21st, but the clerk rejected it then. She told him to file electronically, even though his case was designated as a paper ROP. And so Mr. Beery was then left with no way to file. So he mailed his motion, which the court ultimately accepted. And when he showed up at the clerk's office that day, or he himself didn't show up, but counsel or representative versus counsel did, he actually had the petition or the motion, I'm sorry, in hand to file. He did, Your Honor. And he handed it to the clerk who handed it back and told him multiple times that he needed to file electronically. He said he could not, that he's attempted multiple times before, and she did not still accept his motion. The court also never explained why they accepted the paper motion that he mailed a week later, but turned away the one that was hand-delivered on September 21st. Well, yeah, I'm right. Go ahead. And ultimately, the court rejected Mr. Beery's motion as untimely and completely closed the courtroom doors to him. And did Mr. Beery make this argument that, in fact, it was timely before the BIA? He did not, Your Honor. And so why wouldn't we find that argument to be forfeited? Because here the BIA addressed the merits of the issue by articulating that his motion was untimely because it was filed more than one year after the IJ issued the removal order on September 21st. But wasn't Mr. Beery simply seeking a motion to file it in a belated manner? In other words, didn't he essentially admit that he was unable to file on the day that it was due and seek equitable tolling or another equitable doctrine to be applied? He did, Your Honor. That's correct. And so he never argued that, in fact, the proper date was in October? He did not. But we think that Mr. Beery meets the bar of exhaustion because the BIA addressed the merits of the issue in its decision, and statutory interpretation of a deadline is a purely legal issue that this Court can decide. But neither the government nor the BIA had an opportunity even to address this argument that you're raising now in your 28J letter and that you raised in your briefs? We raised the arguments in our briefs, Your Honor, and the government has the opportunity to respond. The 28J letter was just about Lopez, which was this Court's application of Riley, but our argument from the opening brief remains the same. We think that because Mr. Beery attempted and was unable to file before or on September 21st, this cannot be the right outcome for a petitioner who made every effort to file. And the Court can remedy his outcome in one of three ways, first, by recognizing his due process violation, his extraordinary circumstances second, or thirdly, the balance of the equities. And I'd like to start with due process. Mr. Beery suffered a due process violation because he was fully foreclosed from filing and he was prejudiced as a result. His motion should, therefore, be accepted as timely. Here, Mr. Beery argues that he had a right to file, which the Court establishes under RUSU, that's part of his broader right of access to the courts, and when he was given absolutely no avenue to file, electronically or paper. It's a very confusing thing. I understand where you're going with that. That's if it's not initially accepted. But your first contention is it wasn't untimely. It was because you had it on October 21st. You filed it. If you got it on September 28th, clearly it was there. So if that's the contention, why is that not the end of it? But I suppose you are addressing the event that September 21st is the date. That's correct, Your Honor. And I'm trying to understand, well, if September 21st is the date, we've got Lopez that says an initial removal date is not the date on which it's entered. It seems to be pretty clear. That's why you filed that letter on it. Well, I mean, are you now just dealing with an alternative basis of what it would be, that we don't accept the fact it's there? I mean, I guess there is the argument that you didn't bring it up. That is sort of a wave of something that, you know, because you went on and accepted the 21st as being the date. There is that position. I don't know if that changes a date, like statute of limitations, simply because you do something earlier than when it's supposed to and maybe be mistaken as the date as to which to go with. So either this case is simple or it's got a lot more convolution in it than we would like to have. Sometimes you look at the end of the result and say, well, it might be nice to just go ahead and deal with it when we get this over. But some things come to us on procedural determinations, and because this will affect a lot of other cases, we have to be clear in terms of that. But if this is simple as, no, this date is October 21st, we can spend all day long here going back and forth. But it's clear if it's the 21st, you filed it on time. The only question is, did you just agree not to take the October 21st? And it seems to me, and I'm missing something here. I mean, I like to go ahead and delve into, well, they didn't accept it and he didn't send it on the right time and it wasn't mailed, but the date was October 21st. Why does that matter? Yes, Your Honor. We do think it's a simple case because what we ask is for Mr. Beery to have his motion to reopen be heard on the merits. And if this Court is prepared to accept his deadline as October 21st and because it received it and accepted it on September 28th, that would resolve the issue. What is the argument that we wouldn't take October 21st under Lopez in the case? What would it be? Is it that? I'm trying to anticipate. What is it? There has to be a basis for us to go the other way on. Yes, Your Honor. Other than the fact I don't understand why no one else picked on this. But until now, I mean, there's a lot of sophistication going on here. So something must be greater in this case than what that simple determination. I would point to Judge Berner's questions about exhaustion, though we think that Mr. Beery met that bar here. And the Supreme Court's intervening guidance on the deadline was issued on the same day that the BIA issued its decision. And so here the BIA didn't have the benefit of considering Riley. And so we bring up these arguments in the alternative due process extraordinary circumstances and tolling because we think that his motion should be heard on the merits anyways. And so depending on whether you're prepared to accept the deadline as October 21st or not, we have arguments that his motion should still be nonetheless accepted as timely. And I can walk through those still if helpful. Proceed. Thank you, Your Honor. Moving back to due process, we do think that Mr. Beery had his right to file violated and that he was prejudiced as a result because evaluating from the point at which his rights were violated, which we think was September 21st when he was given no avenue to file, it's reasonably likely that that impacted the results of his proceedings. He complied with all of the reopening requirements as if it were timely. He made a strong prima facie case to qualify for reopening under VAWA. And as such, we think that if this Court is unprepared to accept the deadline as September 21st, in the alternative they can find that Mr. Beery's due process rights were violated and allow him to have his motion to reopen be heard on the merits. But these same circumstances that amounted to a violation of his due process rights are also sufficiently extraordinary to waive his deadline. Mr. Beery was eligible for statutory waiver of his one-year deadline because he demonstrated extraordinary circumstances as a VAWA petitioner, and the BIA erred when it held otherwise. The VAWA special rule in the statute states that the one-year deadline to file for reopening can be waived in the case of a noncitizen who demonstrates extraordinary circumstances or hardship to a child. We think that Mr. Beery met that standard here as well. The extraordinary circumstances standard are those that are outside of a petitioner's control that should exist to justify waiver of a petitioner's deadline. And those extraordinary circumstances can be brought that would be consistent with Congress's intent to permit reopening for VAWA petitioners. Here, every fact in the record supports that Mr. Beery was prevented from filing and the BIA abused its discretion by failing to consider unrebutted legally significant evidence, including court error, counsel mistake, and domestic abuse. This Court should therefore clarify the standard and correctly apply it to Mr. Beery's case because he faced exactly the type of extraordinary circumstances that justify waiver for battered spouses like himself in attempting to reopen and seek VAWA relief. And the Court can also reach that result of excusing Mr. Beery's lateness in filing by equitably tolling his deadline if they need to. Mr. Beery's deadline should be tolled based on the balance of the equities because he demonstrated diligence in the face of extraordinary circumstances beyond his control, a similar standard. And it would be wrong in an inequitable outcome that a VAWA petitioner here, intended by Congress to receive additional protection, would be unable to file his brief and therefore foreclose from reopening at all. Mr. Beery demonstrated reasonable diligence in the time period that he seeks to toll, those seven days between September 21st and the 28th, and the circumstances beyond his control, the court error that we mentioned, prevented him from filing that day. Here, because he, with the aid of his counsel, avoided and promptly cured the seven-day delay, we believe that he demonstrated reasonable diligence. And beyond that, the extraordinary circumstances for the purposes of tolling are, again, the circumstances he met that day. He was unable to file electronically, and he tried multiple times to. When he showed up at court that day, the clerk rejected his motion, even though he had it prepared and ready to hand to her. The clerk repeatedly provided him erroneous instructions that he ought to file electronically, even though his court was – even though his case was designated as a paper ROP. And as such, we think this is exactly the type of case that is an equities case at its face that requires that his motion be heard on the merits. Ms. Sharma, unrelated to your due process argument, I know that this Court previously denied your client's request for a state of removal. And it's my understanding that your client argued that he feared for his well-being, were he to be removed to Jamaica. I assume that your client is now in Jamaica. Is that right? That is correct, Your Honor. He's been there for a few months. And are you aware – do you know how he's doing? Yes. He seems to be doing okay. I don't think he's necessarily at his best in the time that he's been there. Jamaica has been hit with natural disasters, and he's also settling into society. But, yes, he did express those fears and still is quite keen to return to the U.S. He's in Jamaica? Yes. Okay. Yeah. Yes. And so here we think that our petitioner, especially given that he was applying for valor relief as a battered spouse, should have his motion to reopen be heard on the merits. Thank you very much. All right. Thank you. Thank you. You have a few minutes for rebuttal reserved. Yes, that's correct. Thank you, Your Honor. Mrs. Morinelli. Am I good? Thank you. Thank you. May it please the Court. Lisa Morinelli on behalf of the U.S. Attorney General. Before I begin, I'd just like to thank briefly the Georgetown University Law Clinic for their pro bono work in this case. We really appreciate the professional manner in which the case has been litigated. This case involves a petitioner who asks the Court to excuse years of procedural inaction and overlook mandatory exhaustion requirements in favor of a due process claim that lacks both a liberty interest and any showing of prejudice. Importantly, a petitioner does not argue that he is currently eligible for VAWA. Petitioner never filed an I-360 VAWA petition with USCIS. Petitioner argues that the agency blocked his path, but the agency rather declined to resurrect a closed case for a petitioner who refused to take a basic step towards the relief that he was seeking. Well, I think his argument isn't that he's arguing that his liberty interest was violated because he wasn't allowed, permitted to even file the motion to reopen, not that he had a liberty interest or that the constitutional violation was in the denial of the motion itself. He wasn't even allowed to file the motion. And it's the government's position that he was allowed to file the motion. But wasn't it denied as untimely? Yes, it was denied as untimely, yes. So the merits weren't reached. Both the immigration judge and the board both found it untimely, but they also looked at the fact that no application for relief had been filed before USCIS. So they were looking at the fact, if we do reopen this case, what's going to happen? And both the immigration judge said, even though the abuse, the immigration judge said first, even though abuse has been alleged since 2019, petitioner hasn't shown that he's serious about the relief where he hasn't filed the I-360 with USCIS. I don't understand. So he's guaranteed the right to file one motion to reopen proceedings pursuant to statute in the Supreme Court, correct? Yes. And he was not permitted to do that, correct? The immigration judge did receive, they did eventually accept his motion to reopen. In a timely manner. Yes. So was he permitted to file it electronically in a timely manner? I'm going to go with no. Was he permitted to file it in a timely manner then when he showed up there with the motion in hand and the clerk said, you can't file this? The clerk told him that he needed to return the next day. And the next day was untimely. That was the last day. So whose fault was it that this was not filed in a timely manner? Interestingly, the government's position is that the petitioner before the agency conceded that the motion was untimely. And the issue of whether or not this is a timely motion has not been exhausted before this court. Petitioner has always conceded that his motion was untimely. So my question was, whose fault was it that his motion was untimely when he tried to file it electronically and the clerk said, oh, no, you have to do it in person. Then he tried to do it in person in a timely manner, and the clerk said, oh, no, you have to come back tomorrow. You can't file it here. Was that petitioner's fault somehow? The government is not saying that that is petitioner's fault, no. Whose fault was it? And ultimately, at the end of the day, what we're looking at here is – Well, I mean, you clearly don't want to answer, but I mean, if it wasn't petitioner's fault, then there's only one other party here, and it's the government by way of the clerk. So you can carry on with whatever you want to say about other issues. And ultimately, when we zoom out here, we're looking at – so then when we're looking at a due process claim, we're looking at has the party been prejudiced at the end of the day. And both the immigration judge – He didn't have his motion to re-open granted, so he can't have – he was prejudiced by not being heard. He was heard, and the Board of Immigration Appeals looked at all the circumstances, and they're looking at the fact that this case was on appeal for two and a half years. And in the two and a half years that this case was on appeal, petitioner did not take the first step towards getting the relief that he was seeking, which was filing his application with USCIS. The agency did not have – They probably wouldn't have accepted if he tried. USCIS would have accepted his application. USCIS is separate than the immigration judge and the Board of Immigration Appeals. USCIS hears the applications for benefits of relief, and they have the jurisdiction to consider that, whether or not he qualifies as a valid petitioner. And they would have – but we don't know – they would have accepted it, but he never filed it, and he doesn't argue that he did attempt to file it. So confronted with that, with the board has a numerous amount of motions to reopen. They're looking at what's going to happen if we reopen this case, what's going to happen when we reopen it. And they're looking at the fact that petitioner hadn't filed his application, and so there was – they didn't see that petitioner had taken a serious step towards – But is that a decision to say, well, what's going to happen, as opposed to actually weighing in, considering it in a manner that the case is reopened? I mean, you sort of throw it out in the air. What's going to happen is like, well, off the top of my head, I'm thinking this, but the question here, the BIA concluded initially that this is untimely. It says it's because it was filed on September the 28th, and when in fact it should have been filed on September the 21st. Was that a correct statement? The board was looking at the – My question is, was that a correct statement? Yes, yes. And you – so you would contest that the date should actually have been October the 21st? I'm sorry, I misunderstood your question. The board made a determination that was untimely because it was filed on September the 28th, 2022, and it said in fact it should have been filed on September the 21st of 2021, which is of the remover order. My question is, is that a correct statement, or was that a correct statement? The board was correct that the motion to reopen was untimely because they were looking at what is the entry – what is the date of the entry of the order of removal. You maintain the date of entry was what? September 21st. September 21st. You base that upon the – the IJ issued this order. Yes. But you had 30 days before it would become a final order. And what happened on the 30th day? Was it entered on the 30th day? It was not. It was entered on September 21st.  You entered an order on the – where does it indicate that it's entered on? When you look at Lopez, which is the Lopez v. Bondi case, it speaks specifically to initial removal orders. Was it not an initial removal order on September 21st? Lopez v. Bondi did not consider this circumstance. Were there – were the immigration judges looking at what was the entry of the order of removal for considering an exception to filing for a motion to reopen for a valid proceeding? So it's the government positions that Lopez is not controlling here, and that the – But you're saying that it spoke to the term initial removal order. My question is, was that an initial removal order on September 21st? Yes. Lopez is very clear on when an order is entered. And it seems to follow. I mean, typically, the term entered means it's there. It's the final judgment. If you've got a period of time where you can appeal or you can do things with it, there is – it may not be the final judgment. I'm not sure I've seen this question before, but it seems – I'm just wondering why someone, particularly the counsel analyst in the instance on behalf of his client, didn't recognize, you know, well, this doesn't happen until it's entered. And that is part of our exhaustion argument, that this has not been presented to the agency. So if this court does want to – does want an answer, and if it wants the board to affirmatively decide post-Lopez whether the date was September or October, then the court should remand for the agency to make that decision in the first instance. That sounds reasonable. You're saying that if we want to have a – we can send it back to the court and say, this is – you now have Lopez, and this was timely. And you're saying, isn't that the relief they're asking for? Ultimately, at the end of the day, what they're asking – I said you can do it. You're okay with doing it. So you're saying it's okay for us to do that? If the court wants an answer post-Lopez, yeah, the court should remand for the board to decide in the first instance. But if October 21st is the date, it was timely because it was ultimately accepted September 28th. And if September 21st is the date, there is a due process right here because the clerk's office is the only reason that it was not timely on that date. And to the due process argument, it is the government's position to look at what is the prejudice. At the end of the day, when we zoom out and look at what is the relief that the petitioner is seeking, he's asking – The prejudice is not having his day in court before he is deported. And petitioner did have his time in court, and what we're dealing with here is a motion. He's entitled to a motion to reopen, right? We started the argument with that. He's entitled to one motion to reopen, and that he has not had. He is entitled to a motion to reopen, and the agency considered it. And this Court has also held that the – When did the agency consider it? I thought it was untimely in the government's view. The agency considered it when they issued the decision on his motion to reopen. They issued a decision – When they said it was untimely. When they said it was untimely and considered his due process argument and considered at the end of the day that he wasn't prejudiced because he didn't file an application for the relief that he was seeking. And they were looking at whether or not this petitioner was serious or whether or not it was a procedural delay in the situation. They're looking at – frequently looking at applications or motions that are ultimately procedural delays. I mean, if you're guaranteed a motion, one motion to reopen, why does it matter whether the board thinks you were serious or not? You're guaranteed that. Because this motion – Or the petitioner is guaranteed that. Excuse me. This motion to reopen was to apply for a discretionary relief. At the end of the day, he's asking the Court to reopen to apply for discretionary relief. So the Court's looking at the fact, at the end of the day, are you taking the steps you need to get this discretionary relief? And he didn't file his application with USCIS in order to get that process started. So when the board is looking at this, when it's been on appeal for two and a half years, and the petitioner knew from the IJ's decision, one of the reasons that the motion to reopen was denied, specifically wrote, because no I-360 has been filed with USCIS. So petitioner was on notice that the agency was concerned about the fact that you haven't filed the motion, and then for two and a half years continued not to file it. So the motion to reopen wasn't denied because it was untimely? It was denied because it was untimely and because petitioner had not filed their I-360 with USCIS. The board said, in addition, petitioner still has not filed this application for relief with USCIS, and this case was on appeal for quite some time. So there was plenty of time for petitioner, if that was the relief that he still wanted to seek, to file it with USCIS. If there are no further questions. Thank you. Thank you very much, Mr. Martin. I look forward to your argument. And, Shama, you have a few minutes for rebuttal if you choose to exercise that. Thank you. Thank you, Your Honors. I'd like to rebut two points that the government made. First, on the failure to file Mr. Beery's form I-360, and second, on the deadline issue. First, to the point of the I-360, the government and the BIA hold Mr. Beery to a standard that does not exist in the statute. The statute reads that petitioner is required to attach a copy of their form I-360 that has or will be filed. Mr. Beery did so. You can find it. It starts on page 158 of the record. And here, the fact that he was required to attach a copy does not require him to file it before his motion. It does not require him to file that motion while waiting for BIA proceedings to determine if he can reopen. And the statute also agrees with us. The statute reads that the self-petition has or will be filed with the INS upon granting of the motion to reopen. The dissenting judge in the BIA decision also confirms that reading. And that is what Mr. Beery is waiting for, for his motion to reopen to be heard on the merits. And USCIS agrees with us even more so. If he were to have filed that self-petition while his removal proceedings were ongoing, they would have treated it as a significant adverse factor in determining his discretionary belief. But even beyond that, the government misstates the due process right that Mr. Beery is asking for here. He is not stating a due process interest in a discretionary outcome. He is arguing that his due process rights were violated when he was given no avenue to file in front of the courts. And here, to your point, Judge Thacker, on whose fault was it, it was the immigration court's fault. I will answer that question. And rather than forcing a petitioner like Mr. Beery to bear the burden of that, he argues that he was prevented by circumstances outside of his control, namely the error of the immigration court. And that warrants some remedy to permit his motion to reopen to be heard on the merits. Would Bernie still be able to file this with the USCIS if we send this back to the agency? I mean, what is the limit with the USCIS? There is no limit there. He can, Your Honor. And it would be smart for him to file it with USCIS once his motion to reopen is granted, if he's able to ask for a stay, and then he filed that self-petition with USCIS. But right now — And there's no limitation on whether they will accept it? I do not believe so, Your Honor. And so here, what the government argues was prejudice in Mr. Beery's case. The prejudice inquiry is determined from the point at which his rights were violated. And again, the statute, which determines what his reopening requirements were under Section 1229A.C.7.C.4, it only requires that he attach himself a copy of that petition, which he has, and he presents a prima facie case for himself in that. Second, moving to the deadline issue, again, we just want to affirm that the definition of a final order of removal in Section 1101 determines that the order becomes final upon the earlier of either a determination by the BIA or the expiration of the period in which he is permitted to seek review. And while the government asks for remand on that issue, we think that the correct statutory interpretation of a deadline, just as this Court did in Riley, is something that this Court can consider to then send down for remand for Mr. Beery's motion to be considered on the merits. Because truly, that is what Mr. Beery is asking for here today. Ultimately, he just seeks an avenue that his motion to reopen can be heard on the merits. He was denied that opportunity when he was given no avenue to file with the Immigration Court, and we ask that, however it chooses to do so, this Court permit that his motion to reopen be heard on the merits. Thank you very much. Thank you very much. Professor Hosman-Shipodo, did you introduce the gentleman beside you? I did not. This is John Peng, who is one of the fellows in the clinic, and this is Jeff Kousoulidis, who is also a third-year law student in the clinic. Thank you very much. Counsel for the government ably complimented you, and I commend her for doing so, for the fine work you're doing. You know, this is a pro bono case, and we often ask and seek counsel who will provide representation, and without that level of assistance, it would be very difficult sometimes. You've been very helpful to the Court, and, of course, the government counsel always. You've done an excellent job, too. So we're going to adjourn until tomorrow morning for court. We'll come down and greet counsel and proceed with activities of the day. This Honorable Court stands adjourned until this afternoon. God save the United States and this Honorable Court.
judges: James Andrew Wynn, Stephanie D. Thacker, Nicole G. Berner